DAN ROWAN CORTRIGHT, SBN 206856
THE ROWAN FIRM
PO Box 2354
Rohnert Park, California 94927-2354
707-360-1009
dan@therowanfirm.com

Attorney for Plaintiff
MOORE SWEEPING

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MOORE SWEEPING, a California corporation,

Plaintiff,

vs.

GUY F. Atkinson CONSTRUCTION, LLC, a Maryland limited liability company; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 12; JOSEPH PACHECO; and DOES 1 to 10, inclusive,

Defendants.

Case No.: 2:22-cv-07496-JFW-AGR

**AMENDED VERIFIED COMPLAINT FOR:**

1. **Breach Of Contract**
2. **Breach of the Covenant of Good Faith and Fair Dealing**
3. **Unfair Business Practices (Bus. & Prof. Code §17204)**
4. **Intentional Interference with Contractual Relations**
5. **Intentional Misrepresentation**
6. **Intentional Interference with Prospective Economic Advantage**

**DEMAND FOR JURY TRIAL**

COMES NOW MOORE SWEEPING ("Plaintiff") who complains and alleges against the defendants as follows:

**THE PARTIES**

1. At all times mentioned herein, Plaintiff MOORE SWEEPING was and is a California Corporation based in Citrus Heights, California.

2. At all times mentioned herein, defendant GUY F. ATKINSON CONSTRUCTION, LLC ("Atkinson") was a Maryland limited liability company doing business in California.

3. At all times mentioned herein, defendant INTERNATIONAL UNION OF

OPERATING ENGINEERS, LOCAL 12 (the "Union") was a labor union based primarily in Southern California.

4. At all times mentioned herein, defendant JOSEPH PACHECO ("Pacheco") was an individual and Business Representative for the Union.

5. The true names and capacities, whether individual, corporate, or otherwise of the defendants named in this Complaint as Does 1 through 10, inclusive, are unknown to Plaintiff. Plaintiff is informed and believes, and on that basis alleges, that each of said fictitiously named defendants is liable to Plaintiff on the causes of action herein alleged and therefore Plaintiff sues said defendants by said fictitious names. Plaintiff will move to amend this Complaint when the true names and capacities of said fictitiously named defendants are ascertained.

## **JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. sections 1332, 1441 and 1446 because there is diversity of citizenship between Plaintiff and defendant Atkinson, and the jurisdictional limit is met, as Plaintiff's claims exceed $75,000.

7. Venue is proper in this Court because in accordance with 28 U.S.C. § 1441(a) it has been removed to the "district and division embracing the place where such action is pending."

## **GENERAL ALLEGATIONS**

8. Plaintiff and Atkinson entered into a contract, dated July 19, 2019 (the "Contract"), whereby Plaintiff was to perform street sweeping services for Atkinson on a State Route 60 pavement rehabilitation project in Los Angeles County (the "Project"). (See the full Contract and its attachments collectively attached hereto as **Exhibit 1.**)

9. This was a Project subject to the State of California Department of Transportation's ("CalTrans") 2018 Standard Plans and Standard Specifications, as well as the Project Plans for Contract No. 07-301104 approved January 15, 2019 (by CalTrans), and the Notice to Bidders and Special Provisions for Contract No. 07-301104 dated March 25, 2019, as per Exhibit A to the Contract. Furthermore, the Contract was subject to the Federal Disadvantaged Business Enterprise (DBE) program requirements found at 49 CFR Part 26 (the DBE Program) and Caltrans' Disadvantaged Business Enterprise Policy. (See Exhibit B to the Contract.)

10. On or about December 29, 2019, Plaintiff began work on the Project. At the outset, Atkinson did not request more than one DBE street sweeper for the Project.

11. Thereafter, Plaintiff became aware that Atkinson was using another company, Century Sweeping, Inc. ("Century"), for street sweeping on the Project in violation of the Contract terms.

12. Plaintiff also became aware that Atkinson had engaged in two separate DBE violations: the illegal replacement of a DBE subcontractor and prompt payment violations.

13. Following the allegations that Atkinson had engaged in two separate DBE program violations, CalTrans investigated Atkinson's alleged violations. On or about April of 2020, CalTrans found that Atkinson had indeed committed the two DBE violations alleged. However, when Plaintiff requested the report of CalTrans' investigation, CalTrans personnel responded that it had lost the report and all documents related to that investigation. Nevertheless, Plaintiff kept copies of email communications between Plaintiff and CalTrans related to that investigation (collectively attached hereto as **Exhibit 2**).

14. It was immediately following this investigation that Atkinson terminated the Contract without notice and without a justifiable reason, as Plaintiff had performed all work required of it under the Contract to that point. Atkinson's purported reason for terminating the Contract was that Plaintiff did not obtain the required "bona fide special shift letter" from the Union to begin work at the time it was instructed to by Atkinson. But Atkinson itself was complicit with the Union in preventing this letter from being obtained by Plaintiff.

15. Atkinson never communicated with the Union directly regarding this letter or attempted to clear up the issue. For unexplained reasons, Plaintiff was the only subcontractor out of several on the Project that had this bona fide special shift letter requirement. Atkinson stopped Plaintiff from working by way of the Union. The Contract stipulates that Plaintiff must work with the Union, so Plaintiff was essentially held hostage by the Union's arbitrary requirement. Further, Atkinson never provided the Union with the required documents for Plaintiff to begin work at the time it was instructed to. Thus, Atkinson is responsible for the stoppage in Plaintiff's work and the termination of the Contract.

16. At the time of termination of the Contract, there remained outstanding to Plaintiff $759,739.23 left on the Contract price.

17. Plaintiff thereafter instituted a complaint with CalTrans relating to Atkinson's termination of the Contract. CalTrans advised Plaintiff to file a Stop Notice for the amount of the contract less the amount paid by Atkinson, which Plaintiff did in the amount of $759,739.23.

18. CalTrans thereafter received facts and evidence from both Plaintiff and Atkinson, and ultimately found that Atkinson had good cause to replace Moore despite the evidence to the contrary. Plaintiff was, therefore, left with no alternative but to seek legal redress for Atkinson's actions.

## FIRST CAUSE OF ACTION

**(Breach of Contract – against Atkinson)**

19. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

20. Plaintiff performed all terms and conditions of the Contract, except those it was prevented from performing by defendants, or those which were excused or made impossible by defendants' conduct.

21. All conditions required for defendants' performance of the Contract occurred.

22. Atkinson breached the Contract by terminating the Contract prematurely and on false grounds. Atkinson's stated reason for terminating the Contract was that Plaintiff did not obtain the required shift letter to start work at the time Atkinson required it to start. Yet, as set forth more fully above, Atkinson failed to communicate with the Union on Plaintiff's behalf on this issue. Thus, its termination of the Contract was a pretext, was invalid and constitutes a breach of the Contract terms.

23. Plaintiff suffered damages as a result of Atkinson's breaches of the Contract. At the time of Contract termination, there remained approximately $759,739.23 owing to Plaintiff and many months left on the Contract.

24. Atkinson's breach of the Contract was a substantial factor in causing the aforementioned harm to Plaintiff.

25. Moreover, the Contract contains an attorneys' fees clause entitling Plaintiff to recovery of its attorneys' fees in this lawsuit.

26. Wherefore, Plaintiff prays for relief as set forth herein.

**SECOND CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing – against Atkinson)**

27. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

28. Plaintiff performed all terms and conditions of the Contract, except those it was prevented from performing by defendants, or those which were excused or made impossible by defendants' conduct.

29. All conditions required for defendants' performance of the Contract occurred.

30. Defendants breached the covenant of good faith and fair dealing implied in every contract in California (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658) by prematurely terminating the Contract for an invalid reason and by being complicit in that false reason.

31. Plaintiff performed all work required of it under the Contract, and Atkinson's actions were not done fairly and in good faith and constitute a breach of the implied covenant of good faith and fair dealing, which provides that no party to a contract will unfairly interfere with the right of any other party to receive the benefits of the contract. Furthermore, it was only because CalTrans found Atkinson had engaged in two separate legal violations relating to compliance with the DBE requirements that Atkinson canceled the Contract. Therefore, Plaintiff did not receive the full benefits of the Contract.

32. Plaintiff suffered damages as a result of Atkinson's breach of the covenant of good faith and fair dealing. At the time of termination, there remained $759,739.23 and many months left on the Contract.

33. Atkinson's breach of the covenant of good faith and fair dealing was a substantial factor in causing the aforementioned harm to Plaintiff.

34. Wherefore, Plaintiff prays for relief as set forth herein.

**THIRD CAUSE OF ACTION**

**(Unfair Business Practices - Bus. & Prof. Code §§17200, et seq. – against all defendants)**

35. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

36. California's unfair competition law, codified at Business & Professions Code §§17200, et seq., prohibits a person or entity from engaging in any unlawful, unfair or fraudulent business practice.

37. Defendants committed a violation of this law by unlawfully terminating, causing to be terminated, or interfering with the Contract without just cause.

38. It is Plaintiff's belief that it was CalTrans' investigation finding that Atkinson had engaged in two separate legal violations regarding the DBE requirements of the Contract that caused Atkinson to discriminate against Plaintiff as a subcontractor and unfairly cancel the Contract, despite Plaintiff having performed all work required of it thereunder. Additionally, Plaintiff believes that the Union and Pacheco intentionally interfered with the Contract, including resorting to fraud, for the purpose of having Plaintiff removed from the Project to be replaced by a Union member business.

39. Defendants' above actions constitute unfair, unlawful and fraudulent business practices.

40. Plaintiff was harmed by defendants' actions, as set forth herein.

41. Defendants' unfair, unlawful and fraudulent business practices were a substantial factor in causing the aforementioned harm to Plaintiff.

42. Wherefore, Plaintiff prays for relief as set forth herein.

**FOURTH CAUSE OF ACTION**

**(Intentional Interference with Contractual Relations**

**- against the Union and Pacheco only)**

43. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

44. As set forth more fully above, Plaintiff and Atkinson entered into the Contract dated

July 19, 2019, whereby Plaintiff was to perform street sweeping services for Atkinson the Project.

45. The Union and Pacheco both knew of the Contract, as they requested of Plaintiff and had several interactions with Plaintiff regarding various Project issues including the requirement that Plaintiff provide a "bona fide shift letter" to the Union regarding the time Plaintiff's work was to begin on the Project.

46. The Union and Pacheco intentionally made Plaintiff's performance of the Contract more difficult, in fact impossible in this case, by *only* requiring that Plaintiff, owned by an African-American contractor who is a member of the Teamsters union, provide the "bona fide shift letter" regarding its operator's start time on the Project. When the Union and Pacheco required this letter, they knew that Plaintiff would not be able to provide such letter and the Contract would be disrupted. Additionally, at the start of Plaintiff's services under the Contract, the Union and Pacheco requested of Plaintiff information that is not standard industry practice, such as a copy of its loan application for the sweepers and a site map for parking of the sweepers, further indicating the Union and Pacheco's discriminatory attitude towards Plaintiff.

47. As stated, when the Union and Pacheco, in a discriminatory manner, required only Plaintiff to provide the "bona fide shift letter" they intended to disrupt the performance of the Contract, or they knew that disruption of performance of the Contract was certain or substantially certain to occur. On information and belief, no other subcontractor on the Project was required to have such a letter, and in fact Plaintiff has never been required to obtain such a letter on any project it has worked during the course of its 12-year business existence.

48. Plaintiff was harmed by the interference with the Contract, as more fully set forth herein. Plaintiff lost income of $759,739.23 when the Contract was terminated early for the purported reason that Plaintiff was unable to provide the "bona fide shift letter".

49. The Union and Pacheco's actions were substantial factors in causing the aforementioned harm to Plaintiff. Additionally, in his capacity as representative of the Union, Pacheco made discriminatory comments to Atkinson related to the fact that Plaintiff's owner Richard Moore is not a Union member, and the Union did not want such persons to work on Union projects. Pacheco's statements and actions were made and done with discriminatory intent, were

malicious, oppressive and willful, and are attributable to the Union. Therefore, the Union and Pacheco are liable to Plaintiff for punitive damages under California Civil Code §3294.

50. Wherefore, Plaintiff prays for relief as set forth herein.

**FIFTH CAUSE OF ACTION**

**(Intentional Misrepresentation - against the Union and Pacheco only)**

51. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

52. In April 2020, defendants Union and Pacheco represented to Plaintiff that Plaintiff's street sweeper operator Arthur Martinez had filed a Union grievance against Plaintiff for Plaintiff's alleged failure to pay the correct applicable wages pursuant to the Union's Short Form Collective Bargaining Agreement. This representation is false. Mr. Martinez did not willingly file any grievance.

53. When the Union and Pacheco made the representation to Plaintiff about the grievance, they knew it to be false. The Union, and Pacheco in particular, drafted the grievance purportedly on Martinez's behalf and coerced him into signing it. Mr. Martinez only signed it under duress and fear of the Union's retribution if he did not sign it.

54. The Union and Pacheco intended that Plaintiff rely on the representation about the grievance being authentic in an effort to put pressure on Plaintiff to either quit the Project or so that Plaintiff would be forced off the Project, so that it could be replaced with a Union member.

55. Plaintiff reasonably relied on the Union and Pacheco's representation about the grievance.

56. Plaintiff was harmed by the misrepresentation by Pacheco and the Union, as the Union used the grievance and Plaintiff's alleged failure to obtain the bona fide shift letter as an excuse to terminate the Contract.

57. Plaintiff's reliance on Pacheco and the Union's misrepresentation was a substantial factor in causing its harm.

58. Pacheco and the Union's misrepresentation and other actions were malicious, oppressive and willful, entitling Plaintiff to punitive damages.

59. Wherefore, Plaintiff prays for relief as set forth herein.

**SIXTH CAUSE OF ACTION**

**(Intentional Interference with Prospective Economic Advantage - against the Union and Pacheco only)**

60. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

61. At the time the Union had the Contract terminated, Plaintiff and Atkinson were in an economic relationship that most certainly would have resulted in an economic benefit to Plaintiff under the Contract. In addition, Plaintiff and Atkinson were in discussions for Plaintiff to perform all street sweeping needs for Atkinson in Southern California. Plaintiff intended to open a shop in Southern California and build on its reputation to obtain further work from other contractors as well. None of that was possible once the Contract was terminated.

62. The Union and Pacheco knew of that business relationship between Plaintiff and Atkinson.

63. The Union and Pacheco engaged in the above actions regarding the grievance and termination of the Contract to interfere with Plaintiff and Atkinson's business relationship.

64. By engaging in this conduct, the Union and Pacheco intended to disrupt that business relationship or knew that disruption of the relationship was certain or substantially certain to occur.

65. The relationship between Plaintiff and Atkinson was disrupted, as the Contract was terminated, and Plaintiff has not done any further business with Atkinson.

66. Plaintiff was harmed by the Union and Pacheco's interference.

67. The Union and Pacheco's conduct was a substantial factor in causing Plaintiff's harm.

68. Pacheco and the Union's misrepresentation and other actions were malicious, oppressive and willful, entitling Plaintiff to punitive damages.

69. Wherefore, Plaintiff prays for relief as set forth herein.

**PRAYER FOR RELIEF**

Plaintiff prays for relief as follows:

1. For compensatory damages in an amount according to proof against all defendants;
2. For punitive damages against the Union and Pacheco pursuant to the Fourth, Fifth and Sixth causes of action;
3. For prejudgment interest on all damages and other sums due to Plaintiff;
4. For attorneys' fees pursuant to the Contract;
5. For costs of suit; and
6. For such and other and further relief as the Court deems just and proper.

THE ROWAN FIRM

DATED: November 8, 2022 By: ____________

Dan Rowan Cortright, Esq.
Attorney for Plaintiff
MOORE SWEEPING

**VERIFICATION**

I, Richard Moore, am the Chief Executive Officer of Plaintiff Moore Sweeping in the within action. I have read the foregoing Amended Complaint and know its contents. As to those matters of which I have personal knowledge, the allegations in the Amended Complaint are true and correct, and as to those matters stated on information and belief, I believe them to be true.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed this 8TH day of November, 2022 at Citrus Heights, California.

Richard Moore, CEO for
Plaintiff Moore Sweeping